**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FRENCSHUN AKEREDOLU, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:21-CV-00581 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Frencshun Akeredolu brought this action against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* and 28 U.S.C. § 1346(b)(1). R. 12, Am. Compl. ¶ 6.[1] The government now brings a motion for summary judgment on statute of limitations grounds. R. 15, Def.'s Br. at 1. The government argues that the complaint was filed after the expiration of the six-month statute of limitations period required by 28 U.S.C. §§ 2401(b), 2675(a). *Id.* Akeredolu resists the limitations defense by attempting to raise a factual question on when the denial was mailed and whether the government sent the denial-of-claim letter by certified mail, and (failing the first two arguments) she tries to invoke equitable tolling.[2] R. 18, Pl.'s Resp. at 2–

---

[1]This Court has federal-question jurisdiction over the Federal Torts Claims Act under 28 U.S.C. § 1331. The limitations flaw discussed in the Opinion is not an obstacle to subject matter jurisdiction. *United States v. Wong*, 575 U.S. 402, 409 (2015) (holding that the time limits in 28 U.S.C. § 2401(b) are not jurisdictional). Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

[2]This Opinion refers to Akeredolu with she/her pronouns, because the response brief does so, R. 18 at 1, as does the Amended Complaint in the prefatory paragraph and certain

4. None of those responses raises a genuine issue of material fact against the limitations defense, and the government's summary judgment motion must be granted.

## I. Background

In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The facts below are undisputed unless otherwise noted.

In August 2017, Akeredolu was a passenger in a vehicle in the South Loop area of Chicago when the car was rear-ended by the driver of another car. R. 16, DSOF ¶ 1; Am. Compl. ¶¶ 10, 16. The driver of the other car turned out to be an FBI Task Force officer, Bryan Carr. Am. Compl. ¶ 16. Because she suffered injuries in the collision, Akeredolu filed an administrative claim with the FBI as required by the Federal Tort Claims Act (commonly known in federal litigation as the FTCA). DSOF ¶ 2; 28 U.S.C. § 2401(b).

The FBI rejected the claim and sent notice of the denial to Akeredolu by certified mail on, at the latest, July 28, 2020. DSOF ¶ 3; R. 23, Def.'s Reply at 2. The letter informed Akeredolu that she had six months from the date of the mailing to file a lawsuit in federal district court. DSOF ¶ 3. Akeredolu disputes that the record reflects the letter was mailed on July 28, 2020, though the dispute turns largely on her

---

other paragraphs, R. 12 at 1; R. 12 ¶ 17. But there are other references to the Plaintiff with male pronouns. *Id.* ¶¶ 6, 8.

view that the letter was not sent by certified mail. R. 18-1, Pl.'s Resp. DSOF ¶ 3. Akeredolu does admit to receiving—at some unspecified point in time—the denial notice. Am. Compl. ¶ 8. Six months after July 28, 2020, would be (not counting the day of the mailing) January 29, 2021 (which was a Friday). On February 1, 2021 (the following Monday), Akeredolu filed this negligence action against the United States. DSOF ¶ 4.

## II. Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party

3

must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## III. Analysis

As a threshold matter, it is worth pointing out that the government filed this dispositive as motion to dismiss or, alternatively, for summary judgment. R. 15, Def.'s Br. at 1. Because the statute of limitations is an affirmative defense, not a matter of merits pleading, the Court specified that indeed the motion is "properly characterized as an early summary judgment motion because it raises the statute of limitations affirmative defense." R. 17. The Court explicitly offered Akeredolu the opportunity to seek discovery, and then file an extension motion to respond to the summary judgment motion. *Id.* But Akeredolu declined to take discovery, and simply filed the response brief. So, although the facts will be considered in the light most favorable to Akeredolu, and the government does bear the burden of proving an affirmative defense, it is crucial to note that Akeredolu did not seek discovery so she is in the same position as any other plaintiff who faces a post-discovery summary judgment motion: this is the "put up"—or forever hold your peace—"moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022).

The FTCA requires prospective plaintiffs to exhaust administrative remedies before filing suit in federal court. 28 U.S.C. § 2675(a). The administrative process begins when the claimant presents the claim to the proper agency. *Id.* The claimant must then allow the agency six months to resolve the claim. *Id.* Then a separate six-

4

month clock starts ticking on filing a lawsuit in federal court, starting either from the expiration of the agency's six-month decisional period or (as applicable to Akeredolu's case) from the mailing of the agency's decision on the claim. *Id.* The dispute here is whether Akeredolu failed to file suit within the six-month statute of limitations following the government's mailing of the denial of her administrative claim.

The government's argument is straightforward: the denial notice was mailed via certified mail on, at the latest, July 28, 2020. Six months from July 28, not counting the day of mailing, would be January 29, 2021 (which was a Friday). So, the government argues, Akeredolu's lawsuit is time-barred because she filed suit on February 1, 2021 (which was the following Monday). Def.'s Br. at 3. For her part, Akeredolu attempts to cast doubt on when the government mailed the denial letter, whether the mailing was via certified mail, and (if those two arguments fall short) whether equitable tolling might apply to save the suit. R. 18, Pl.'s Resp. at 1–2.

## A. When & How the Denial Was Mailed

In proving the when and how of the mailing, the government submitted a copy of the denial notice dated July 27, 2020, and addressed to Akeredolu's law firm, along with a U.S. Postal Service Certified Mail Receipt showing a signature receipt on July 31, 2020, at the law firm's address. R. 16-1, 16-2. In response to the government's evidence, Akeredolu argues, first, that the government did not include a Postal Service article number on the denial notice and, second, that the denial notice stated that it was sent by "Registered/Return Receipt." Pl.'s Resp. at 2 (citing R. 16-1).

On the first point, Akeredolu does not explain how the denial notice would re-
flect a Certified Mail article number. The sender of a piece of certified mail does not
know what number the Postal Service is going to assign to the article until the sender,
well, sends it. Maybe it is possible for a sender to visit the Post Office, provide a letter
to the clerk for processing and mailing, and then ask for the letter back to write the
newly assigned article number on the letter. But that is far-fetched, to say the least.
There is nothing suspicious about the lack of an article number on the denial notice.

On the second point, the above-the-addressee-block statement that the denial
notice was sent "Registered/Return Receipt," R. 16-1, also is not suspicious. The Cer-
tified Mail Receipt does reflect a signature for the delivery and the government did
obtain a return receipt on the delivery. R. 16-1. The single-word reference to "Regis-
tered" does not undermine the conclusion that the Certified Mail Receipt is not the
receipt for the denial notice. It is true that, ideally, the government would have sub-
mitted an affidavit from a records custodian to aver that the Certified Mail Receipt
attached to the summary judgment motion was maintained in the file of Akeredolu's
claim file. Indeed, it would probably be sensible for the government to disclose that
to Akeredolu even now, just to provide 100% confirmation to her on the bona fides of
the Receipt. But remember that Akeredolu passed on the opportunity to take any
discovery.

Next, Akeredolu argues that the two pieces of the Certified Mail Receipt are
not necessarily connected, because the 20-digit article number (7019 2970 0002 3011
4981) on the first piece (the piece that the sender keeps initially) is not reflected on

the second piece (the piece that bears the signature of the recipient). R. 16-1. Again, this supposed mystery would have been dispelled by a simple conferral with the government. In its reply, the government explained that the sticker placed on the signature-receipt card was covering the 20-digit article number, and removing it revealed the same article number on the signature-receipt card as the sender's piece. Def.'s Reply at 2–3, R. 21-1.

Akeredolu's final contention on the mailing is that, during the pandemic, the Postal Service suspended the signature requirement, so there in effect was no such thing as "certified" mail as required by the limitations statute. It is true that Section 2401(b) requires that the denial be sent "by certified or registered mail." 28 U.S.C. § 2401(b). But even if, as Akeredolu alleges, the Postal Service generally suspended the signature requirement, the government did ask for and did receive a typical Certified Mail Receipt with a signature to confirm delivery. R. 21, Def.'s Reply at 3. Nothing about the Certified Mail Receipt creates a genuine issue on whether the government sent the denial notice by certified mail.

On the specific date of the mailing, there is some reason to doubt the government's initial contention that the date is July 27, 2020, rather than July 28. In its Statement of Facts, the government asserted that the denial notice was mailed on July 27, 2020. DSOF ¶ 3. But that is the date on the denial *notice* itself, not necessarily the date of the mailing. In their reply brief, the Government says the denial of claim letter was sent on July 28, 2020, at the latest. Def.'s Reply at 4. That date is actually established by the evidence: the Certified Mail Receipt (the first piece kept

7

by the sender) bears a "Postmark" date and time of July 28, 2020, at 12:30 p.m. R. 16-2. The tracking record shows that the article arrived at the Postal Service's Bedford Park facility, at the first entry in its delivery course, on July 28, 2020, at 10:44 p.m. R. 21-2. So, July 28 is the date of mailing, not July 27. (Again, the record would have benefitted from records-custodian affidavit, with the under-oath implications likely causing a closer look at the records.)

Even if July 28 is the proper date to calculate the six-month statute of limitations, Akeredolu's lawsuit was filed too late. In *Tribue v. United States*, the Seventh Circuit held that "§ 2401(b)'s six-month limitations period does not include the date an agency mails its denial of claim." 826 F.2d 633, 635 (7th Cir. 1987). The counting rule for the statute is to go forward one day after the mailing, and then move forward six months. *Id*. With the mailing date of July 28, 2020, the six-month limitations clock began on July 29 and then expired on Friday, January 29, 2021. But Akeredolu did not file the lawsuit until February 1, 2021. Even viewing the facts in the light most favorable to Akeredolu, this lawsuit was filed after the expiration of the limitations period.

## B. Equitable Tolling

For her final effort, Akeredolu argues that some form of equitable tolling should apply because the Postal Service supposedly suspended its certified-mail procedures (as argued earlier). She relies on *United States v. Kwai Fun Wong*, 575 U.S. 402, 410–411 (2015), for the application of equitable tolling. Pl.'s Resp. at 4. But all that the *Wong* case holds, as relevant here, is that sometimes equitable tolling does

apply to suits against the federal government. *Id.* at 412. But the facts of the two plaintiffs in *Wong*, are nothing like what happened with Akeredolu here. One plaintiff brought an administrative claim against the Immigration and Naturalization Service within two years of the alleged unlawful action; when her claim was denied and mailed on December 3, 2001, she had until June 3, 2002, to file suit in federal court. *Id.* at 405. This plaintiff already had an ongoing suit in federal district court asserting non-FTCA claims against the government. *Id.* In mid-November 2001, the plaintiff sought leave to amend her complaint to add the FTCA claim. *Id.* In April 2002, the magistrate judge recommended granting leave to amend, but the district court did not adopt the proposal until June 25, 2002, which was three weeks after the FTCA's six-month deadline. *Id.* at 405–06. The Supreme Court affirmed the application of equitable tolling in those circumstances. *Id.* at 420.

The other plaintiff in *Wong* brought the case in state court on behalf of a deceased father's young son; the father had died in a highway accident. 575 U.S. at 406. It was not until years into the state court litigation that the plaintiff learned that the Federal Highway Administration had approved installation of the barrier that was central to the accident at issue. *Id.* Based on that new information, the plaintiff brought a tort claim against the federal agency more than five years after the accident, but of course had not submitted a claim to the agency itself within the two-year limitations period to present a claim to the agency. *Id.* at 407. For that plaintiff, the Supreme Court instructed that the district court (which had held that equitable

tolling could never apply to the limitations period as a matter of law) should consider the application of equitable tolling. *Id.* at 420–21.

Akeredolu has not offered any persuasive reason why equitable tolling should apply here. The circumstances in this case are nothing like those faced by the plaintiffs in *Wong*, in which one plaintiff sought to add the claim before the expiration of the limitations period and the other did not learn of the federal government's involvement in the tort until years later. (Indeed, for the latter plaintiff, it is not clear that the equitable tolling would be successfully shown in those circumstances.) Here, there is nothing to suggest that there were circumstances beyond Akeredolu's control that led her to file the lawsuit after the six-month deadline. Indeed, Akeredolu admits to receiving the denial notice, but rather cagily crafts the admission as saying that she "ultimately received a denial of liability" without saying when, or even approximately when, she received the denial. Am. Compl. ¶ 8. Nor does Akeredolu explain how the Postal Service's purported suspension of certified-mail procedures played a role in filing the lawsuit too late. Equitable tolling does not apply on the facts here.

## IV. Conclusion

The government's motion for summary judgment is granted. The lawsuit was not filed with the statute of limitations, so the case is dismissed with prejudice. The tracking status hearing of April 8, 2022, is vacated. Final judgment shall be entered.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2022